UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 07    4110

|  |  |
|---|---|
| RICHARD J. KOOP, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| PALL CORPORATION, ERIC KRASNOFF, LISA MCDERMOTT, and FRANCIS B. MOSCHELLA, | ) ) ) |
| Defendants. | ) ) x |

SEYBERT. J.

CIVIL ACTION NO.

LINDSAY, M.

JURY TRIAL DEMANDED

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    OCT 02 2007    ★

Plaintiff, Richard J. Koop ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Pall Corporation ("Pall" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of Pall's securities between March 22, 2007 and August 8, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Pall, together with its subsidiaries, manufactures and markets filtration, purification, and separation products worldwide. The Company's products remove solid, liquid and gaseous contaminants from a variety of liquids and gases.

3.     On July 19, 2007, the Company shocked investors when it disclosed that the Audit Committee of its Board of Directors had commenced an inquiry into a possible material understatement of U.S. income tax payments, and into the Company's provision for income taxes in certain prior periods commencing with the fiscal year ended July 31, 1999.

4.     Upon the release of this news, Pall's shares declined $7.67 per share, or over 15.7 percent, to close on July 20, 2007 at $41.11 per share, on unusually heavy trading volume.

5.     Then on August 2, 2007, Pall disclosed that it was restating its financial statements for the fiscal years 1999 through 2006, and for each of the fiscal quarters ended October 31, 2006, January 31, 2007, and April 30, 2007.  The need for the restatement resulted from the Company's understatement of U.S. income tax payments, and from its provision for income taxes. The Company stated that the taxes payable could be in excess of $130 million, exclusive of interest and penalties. Further, the Company instructed investors that they could no longer rely on the Company's previously issued financial statements.

6.     On this news, Pall's shares fell an additional $1.21 per share, or almost 3 percent, to close on August 2, 2007 at $39.90 per share, on unusually heavy trading volume. The following day, the Company's shares declined an additional $1.28 per share, or 3.2 percent.

7.     Finally, as a result of the Company's disclosures, Standard & Poor's Ratings Service cut the Company's corporate credit rating from A- to BBB, and also lowered the Company's short-term credit rating. An article published on August 9, 2007 revealed that the downgrade reflected the significance of the tax issue, the unreliability of the Company's previously issued financial statements, the risk of noncompliance with various lending agreements, and the uncertainty regarding the cause of the matter.

8.     On this news, Pall's shares declined an additional $1.64 per share, or over 4.1 percent, to close on August 9, 2007 at $37.82 per share, again on heavy trading volume.

9.     The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, defendants failed to disclose or indicate the following: (1) that Pall had overstated its financial results by materially understating its income tax liability; (2) that the Company had misstated its effective tax rate, and the factors affecting the Company's effective tax rate; (3) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

10.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).   Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, Pall's principal executive office is located within this Judicial District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, Richard J. Koop, as set forth in the accompanying certification, incorporated by reference herein, purchased Pall's securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant Pall is a New York corporation with its principal place of business located at 2200 Northern Boulevard, East Hills, New York.

17.     Defendant Eric Krasnoff ("Krasnoff") was, at all relevant times, the Company's Chairman, Chief Executive Officer ("CEO"), and President.

4

18.     Defendant Lisa McDermott ("McDermott") was, at all relevant times, the Company's Chief Financial Officer ("CFO") and Treasurer.

19.     Defendant Francis B. Moschella ("Moschella") was, at all relevant times, the Company's Corporate Controller, Chief Accounting Officer, and Vice President.

20.     Defendants Krasnoff, McDermott, and Moschella are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Pall's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Pall, together with its subsidiaries, manufactures and markets filtration, purification, and separation products worldwide. The Company's products remove solid, liquid and gaseous contaminants from a variety of liquids and gases.

22.     On March 1, 2007, the Company announced its financial results for the Company's fiscal second quarter (ended January 31, 2007). The Company reported sales for the quarter of $544.9 million, net earnings of $55.8 million, and diluted earnings per share ("EPS") of $0.45.

23.     On March 9, 2007, Pall filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants McDermott and Moschella, and reaffirmed Pall's financial results previously announced on March 1, 2007. Additionally, the Company, in relevant part, stated:

> The underlying tax rate (i.e., the tax rate on earnings before income taxes, excluding restructuring and other charges/discrete items) was 24% in the quarter and six months, unchanged from the same periods in fiscal year 2006. Company management expects that its underlying tax rate for the full fiscal year 2007 will be consistent with fiscal year 2006 and improve in future years as more manufacturing is located into tax-advantaged locations.
>
> Net earnings in the quarter were $55,803, or 45 cents per share, compared with net earnings of $32,436, or 26 cents per share, in the second quarter of fiscal year 2006. Net earnings in six months were $80,237, or 64 cents per share, compared with net earnings of $57,546, or 46 cents per share in the six months of fiscal year 2006. In summary, net earnings in the quarter reflect organic sales growth, an improvement in SG&A as a percentage of sales and ROTC income compared to expense in last year's second quarter.

* * *

The condensed consolidated financial information included herein is unaudited, Such *information reflects all adjustments of a normal recurring nature, which are, in the opinion of Company management, necessary to present fairly the Company's consolidated financial position, results of operations and cash flows as of the dates and for the periods presented herein.* These condensed consolidated financial statements should be read in conjunction with the consolidated financial statements and notes set forth in the Company's Annual Report on Form 10-K for the fiscal year ended July 31, 2006 ("2006 Form 10-K"). [Emphasis added.]

24.    On March 13, 2007, Pall presented at Citigroup's Small & Mid-Cap Conference. During this presentation, Defendant McDermott, in relevant part, stated:

LISA MCDERMOTT: ... As Eric showed in the SG&A trend chart, our cost reduction programs are clearly showing through there and our new organizational structure continues to benefit there. In the quarter, we reduced 240 basis points from 33.3% in last year's second quarter to 30.9% in this year's second quarter. And this is, again, on good cost control, cost reduction as well as leveraging our strong top line. *The underlying tax rate remains at 24% and that's about what we expect for the fiscal year. So in summary, all of the above factors resulted in pro forma earnings per share on -- pro forma earnings for the quarter of $53.4 million or $0.43 per share.* This slide reconciles our pro forma earnings to our as reported or GAAP earnings, if you will, on a pre-tax basis and net earnings basis, and a diluted EPS basis.

*So as we look out at the rest of the year and with mid year sales up 15% and earnings up over 50%, we would expect to moderately exceed our original EPS guidance of $1.45 to $1.60.* [Emphasis added.]

### Materially False and Misleading
### Statements Issued During the Class Period

25.    The Class Period begins on March 22, 2007. On this day, Pall presented at the BB&T Capital Markets Manufacturing and Materials Conference 2007. During this presentation, the Individual Defendants, in relevant part, stated:

ERIC KRASNOFF: ... Overall, we're looking for about $40 million in ongoing cost savings at a runrate, starting at the end of fiscal 2008 and an additional $10 million in annualized tax benefit starting at the same time.

\* \* \*

LISA MCDERMOTT: ... What I'm going to do this morning is provide you some more financial information, kind of big picture for Pall in addition to some of the financial information that Eric has given you and just try to pull it together a little bit. So that's a look at our five-year financial performance as well as our performance for the first half of fiscal year 2007. And that was the six months ended January 31 that was released on March 1. That information, there is more detail on that on our website as well as the earnings calls webcast and then provide a little bit of insight into what we expect for '07 and going forward.

\* \* \*

*Earnings before interest and taxes, or what we call EBIT, was about $247 million in '06. And pro forma earnings per share was $1.35, and the compounded annual growth rate for those two respectively was about 17% and 13% over the five-year period.* And I would say this includes restating the five -- 2002 through 2005 to put in stock compensation expense for the year, so all the years are comparable.

In looking at SG&A, our cost reduction programs, such as EuroPall and soon we will see with AmeriPall that Eric mentioned are showing through. We have seen SG&A reduce 280 basis points as a percentage of sales. And for the six months, it was at 31.2% and this is down from 34% in the first six months of last year. So overall, our EBIT margins, or earnings before interest and income taxes, have improved by 210 basis points to 12.2%.

*Now below that line, our income tax rate -- our underlying rate has stayed at about 24%. For the near-term future, this is about what we expect to see. So in summary, all of this resulted in our pro forma earnings per share of $0.71. This is up almost 50% period over period.* [Emphasis added.]

26.     On May 31, 2007, the Company issued a press release entitled "Pall Corporation Earnings Up Over 40%, Sales increase 10%." Therein, the Company, in relevant part, stated:

Pall Corporation (NYSE: PLL - News) today reported sales and earnings results for the third quarter ended April 30, 2007.

Sales for the quarter were $559.3 million, up 9.7% compared with the third quarter last year. Diluted earnings per share ("EPS") were $0.54, up from $0.20 a year ago. Net earnings were $67.1 million compared to $25.2 million a year ago. EPS on a pro forma basis were $0.53 per share as compared to $0.37 per share in the same quarter last year.

\* \* \*

Eric Krasnoff, Chairman and CEO, stated, "Execution of our strategic plan is driving improvements to the top and bottom line, Pall's Total Fluid Management(sm) value proposition is resonating with customers. The benefits from pricing, productivity improvement and cost reduction initiatives have driven operating profit growth of 35%."

\* \* \*

Referring to the quarter, Mr. Krasnoff added, "Pall's broad cost reduction initiatives were a major contributor to the gross margin expansion to 49.5%. Continued improvement in the profitability of systems played a key role. We are on track to achieve further gross margin expansion in fiscal 2008 as our cost reduction and facilities rationalization initiatives continue to gain traction. Selling, general and administrative ("SG&A") expenses again decreased as a percentage of sales falling to 30%."

27.   On June 8, 2007, the Company filed its Quarterly Report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by Defendants McDermott and Moschella, and reaffirmed the Company's financial results previously announced on May 31, 2007. Additionally, the Company, in relevant part, stated:

> **The Company's effective tax rate for the nine months ended April 30, 2007 and 2006 was 19.0% and 36.5%.** The decrease in the effective tax rate was primarily due to the refinement of prior estimates of income tax liabilities, including amounts relating to the repatriation of foreign subsidiary earnings, as well as the availability of research credits in both the United States of America and the United Kingdom. In addition, the Company recorded tax expense of

$17,000 during the nine months ended April 30, 2006 related to the tax effect of the repatriation of foreign subsidiary earnings.

The condensed consolidated financial information included herein is unaudited. *Such information reflects all adjustments of a normal recurring nature, which are, in the opinion of Company management, necessary to present fairly the Company's consolidated financial position, results of operations and cash flows as of the dates and for the periods presented herein.* These condensed consolidated financial statements should be read in conjunction with the consolidated financial statements and notes set forth in the Company's Annual Report on Form 10-K for the fiscal year ended July 31, 2006 ("2006 Form 10-K"). [Emphasis added.]

28.     The Company's 10-Q filed on June 8, 2007 also contained Sarbanes-Oxley required certifications, certified by Defendants Krasnoff and McDermott, who stated:

> *I, [Eric Krasnoff, Chairman of the Board and Chief Executive Officer /Lisa McDermott, Chief Financial Officer] of Pall Corporation, certify that*

> 1.   I have reviewed this quarterly report on Form 10-Q of Pall Corporation;

> 2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> 3.   Based on my knowledge, *the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;*

> 4.   *The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures* (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) *and internal control over financial reporting* (as defined in Exchange Act Rules 13a15(f) and 15d-15(f)) *for the registrant and have:*

a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)   *Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;*

c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   *The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):*

a)   *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and*

b) Any *fraud,* whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

In connection with the Quarterly Report of Pall Corporation (the "Company") on Form 10-Q for the quarterly period ending April 30, 2007, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, *[Eric Krasnoff, Chief Executive Officer /Lisa McDermott, Chief Financial Officer] of the Company, certify,* pursuant to Section 906 of the SarbanesOxley Act of 2002, 18 U.S.C. Section 1350, that to my knowledge:

(i)   The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii)  *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company,* [Emphasis added.]

29.    The statements contained in ¶¶ 25-28 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that Pall had overstated its financial results by materially understating its income tax liability; (2) that the Company had misstated its effective tax rate, and the factors affecting the Company's effective tax rate; (3) that the Company's financial statements were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

30.    On July 19, 2007, the Company issued a press release entitled "Pall Corporation Audit Committee Commences Inquiry Into Potential Understatement of Provision For Income Taxes In Prior Periods." Therein, the Company, in relevant part, revealed:

*Pall Corporation (NYSE. PLL) today announced that the Audit Committee of its Board of Directors has commenced an inquiry into the possibly material understatement of U.S income tax*

12

> *payments and of its provision for income taxes in certain prior periods beginning with its fiscal year ended July 31, 1999. The matter relates to the taxation of certain indebtedness of the Company to a foreign subsidiary of the Company.* The Company has notified the Internal Revenue Service and the Securities and Exchange Commission of this matter and of the Audit Committee's pending inquiry. ***This matter may also have resulted in the Company's failure to comply with certain terms of its debt or other agreements. The Company may need to seek waivers under those agreements, including to effectuate its intention to declare a quarterly dividend*** for the quarter ending July 31, 2007. The Company intends to report on the Audit Committee's inquiry as soon as practicable. [Emphasis added.]

31.     On this news, the Company's shares fell $7.67 per share, or over 15.7 percent, to close on July 20, 2007 at $41.11 per share, on unusually heavy trading volume.

32.     Then on August 2, 2007, the Company issued a press release entitled "Pall Corporation to Restate Financial Statements." Therein, the Company, in relevant part, further revealed:

> Pall Corporation (NYSE: PLL) today announced that the Audit Committee of its Board of Directors, on the recommendation of management, ***concluded that the Company's annual and quarterly financial statements for the fiscal years 1999 through 2006 and for each of the fiscal quarters ended October 31, 2006, January 31, 2007, and April 30, 2007 should no longer be relied upon and that a restatement of some or all of those financial statements will be required. This conclusion results from the Company's previously announced understatement of U.S. income tax payments and of its provision for income taxes.*** The Audit Committee has informed KPMG LLP, the Company's independent registered public accounting firm, of its conclusion with respect to this matter.
>
> ***The amount of the understatement has not yet been finally determined, but is material and relates to the taxation of certain intercompany payable balances that mainly resulted from sales of products by a foreign subsidiary of the Company to a U.S subsidiary of the Company.*** Under the Internal Revenue Code, these unpaid balances may have given rise to deemed dividend

income to the Company that was not properly taken into account in the Company's U.S. income tax return and provision for income *taxes, The Company has not finally determined the impact on the Company's provision for income taxes in any affected period,* but it will vary from period to period depending on the size of the intercompany payable balances at the end of the affected fiscal quarters, among other factors. *The Company's tax liability will include the amount of taxes that would have been payable with respect to any deemed dividend income in the affected periods, as well as interest on overdue amounts of taxes payable and penalties that may be assessed by the Internal Revenue Service on the eventual resolution of this matter.* The Company cannot predict when its tax liability will be finally determined or whether additional matters will be identified in connection with the ongoing inquiry of the Audit Committee. *The Company believes, however, that taxes payable with respect to the intercompany payable balances described above could be in excess of $130 million, exclusive of interest and penalties.* The Company also believes that, as a result of these circumstances, *it may have one or more material weaknesses in its internal control over financial reporting.*

As previously reported, *this matter may also have resulted in the Company's failure to comply with certain terms of its debt and other agreements, and the Company plans to work with its lenders to seek waivers under those agreements as necessary.*

Eric Krasnoff, Pall's Chairman and CEO, stated, "We are working diligently with the Audit Committee and our auditors to resolve this matter. We are retaining a sharp focus on the operating performance of the business as we serve our global customer base across the Life Sciences and Industrial landscape." [Emphasis added.]

33.     On this news, Pall's shares fell an additional $1.21 per share, or almost 3 percent, to close on August 2, 2007 at $39.90 per share, on unusually heavy trading volume. The following day, the Company's shares declined an additional $1.28 per share, or 3.2 percent.

34.    Following the Company's disclosures, Standard & Poor's Ratings Service cut its ratings on the Company. As *CNNMoney.com* reported on August 9, 2007:

**Pall Corp ratings cut to 'BBB' on co's estimate of taxes pending - S&P**

Standard & Poor's Ratings Services cut its ratings on Pall Corp (NYSE:PLL) after [the] filter and purifier maker disclosed that taxes payable could be in excess of 130 mln usd and that it may have one or more weaknesses in its controls over financial reporting. Pall Corp has been investigating the understatement of its income tax payments and its provision for income taxes for fiscal years dating back to 1999.

*The rating agency said the downgrade also reflects the significance of the issue, the unreliability of previous financial statements, the risk of noncompliance with various lending agreements and uncertainty over the cause of the matter.*

Although S&P expects Pall's cash balance and cash flow generation to be sufficient to meet estimated tax payments, *the maintenance of the negative watch status on the company reflects the potential for a further multiple-notch downgrade if its liquidity position deteriorates.*

*S&P cut its corporate credit rating on Pall to 'BBB' from 'A-' and the short-term credit rating to 'A-3' from 'A-2'.* [Emphasis added.]

35.    On this news, shares of Pall declined an additional $1.64 per share, or over 4.1 percent, to close on August 9, 2007 at $37.82 per share, again on heavy trading volume.

## PALL'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

36.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation

of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

37.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01 (a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements, 17 C.F.R. § 210.10-01(a).

38.     The fact that Pall will restate its financial statements, and disclosed that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, ¶¶7-13; SFAS No. 154, ¶25).

39.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

> a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);
>
> b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)    The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95).

40.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Pall between March 22, 2007 and August 8, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Pall's securities were actively traded on the New York Stock Exchange ("NYSE").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Pall or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, Among the questions of law and fact common to the Class are:

> (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;
>
> (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Pall; and
>
> (c)     to what extent the members of the Class have sustained damages and the proper measure of damages,

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

47.     The market for Pall's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Pall's securities traded at artificially inflated prices during the Class

Period.  Plaintiff and other members of the Class purchased or otherwise acquired Pall's securities relying upon the integrity of the market price of Pall's securities and market information relating to Pall, and have been damaged thereby.

48.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Pall's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Pall's financial well-being and financial statements. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Pall and its financial well-being and financial statements, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## CAUSATION

50.     Defendants' materially false and misleading statements regarding Pall's financials caused Plaintiffs and the members of the Class to purchase Pall common stock during the Class Period at artificially inflated prices.

51.     The price of Pall's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

52.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Pall, their control over, and/or receipt and/or modification of Pall's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pall, participated in the fraudulent scheme alleged herein.

53.     Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, Company insiders sold 29,875 shares of the

Company's stock for gross proceeds of $1,180,930. This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| July 9, 2007 | MARTIN, EDWIN W. JR | 4,625 | $47.28 | $218,670 |
| April 3, 2007 | PEREZ, ROBERTO | 4,477 | $38.03 | $170,260 |
| April 2, 2007 | BARTLETT, MARY ANN | 2,250 | $37.84 - $37.88 | $85,000 |
| April 2, 2007 | PEREZ, ROBERTO | 18,523 | $38.00 - $38.30 | $707,000 |
| | **TOTAL:** | **29,875** | | **$1,180,930** |

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

54.     At all relevant times, the market for Pall's securities was an efficient market for the following reasons, among others:

(a)     Pall's securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Pall filed periodic public reports with the SEC and the NYSE;

(c)     Pall regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Pall was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force

and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Pall's securities promptly digested current information regarding Pall from all publicly-available sources and reflected such information in the price of Pall's securities. Under these circumstances, all purchasers of Pall's securities during the Class Period suffered similar injury through their purchase of Pall's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

56.     The statutory safe harbor provided for certain forward-looking does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Pall who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

23

58.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pall's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

59.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pall's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pall's financial well-being, business relationships, and prospects, as specified herein.

61.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pall's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Pall and its business operations and future prospects in light of the

circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Pall's securities during the Class Period.

62.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof, (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pall's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and financial statements throughout the Class Period, defendants, if they did not have

actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Pall's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Pall's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Pall's securities during the Class Period at artificially high prices and were damaged thereby.

65.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Pall was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pall's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

66.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of Pall within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Pall and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 2, 2007

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD**
**& TOLL, P.L.L.C.**

By: _Catherine Torell_

Catherine A. Torell (CT-0905)
150 East 52nd Street
New York, New York 10022
Tel: 212-838-7797
Fax: 212-838-7745

Steven J. Toll
Daniel S. Sommers
Matthew K. Handley
1100 New York Ave., NW
Suite 500 West Tower
Washington, DC  20005
Tel: 202-408-4600
Fax: 202-408-4699

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _Richard J. Koop_ , ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed a class action complaint asserting securities claims against Pall Corporation ("PLL") and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in Pall Corp. (PLL) during the Class Period of March 22, 2007 through August 8, 2007 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| 7/23/07 | Buy | 500 | 42.35 |
| | | | |
| | | | |
| | | | |
| | | | |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct

Executed this _24_ Day of _September_ 2007.